# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENISE HEIST, | : | Case No. 06-0637 |
| | : | |
| | : | *(electronically filed)* |
| Plaintiff, | : | |
| | : | |
| | : | HON. DAVID S. CERCONE |
| vs. | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| | : | |
| AGR INTERNATIONAL, INC., | : | |
| and UNUM LIFE INSURANCE | : | |
| COMPANY OF AMERICA | : | |
| ("UNUM") | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

AND NOW, this _____day of _____, 2006, upon due consideration of Plaintiff's Motion for Leave to File Second Amended Complaint, it is hereby ORDERED that said Motion is granted. The Second Amended Complaint, which was attached to Plaintiff's Motion, shall be deemed filed as of the date Plaintiff's Motion for Leave to File Second Amended Complaint was filed. Defendant shall have until _____, 2006 to file a responsive pleading to the Second Amended Complaint.

BY THE COURT,

_____J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT F. ALBERTI,** | ) |
| Plaintiff, | ) |
| v. | ) **2:05cv100** |
| | ) **Electronic Filing** |
| **RON LEWIS AUTOMOTIVE GROUP,** | ) |
| **a Corporation, RON LEWIS** | ) |
| **AUTOMOTIVE GROUP HEALTH** | ) |
| **PROTECTION PLAN, INC., THE** | ) |
| **BARRON HEALTH AGENCY, and** | ) |
| **DIVERSIFIED GROUP** | ) |
| **ADMINISTRATORS, a Corporation,** | ) |
| **Defendants.** | ) |

## OPINION

CERCONE, D.J.

Plaintiff commenced this action in the United States District Court for the Western District of Pennsylvania seeking redress for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. This court has jurisdiction pursuant to 29 U.S.C. § 1132(e). Presently before the court are Defendants' separate motions to dismiss for failure to state a claim. For the reasons set forth below, the motions will be granted in part and denied in part.

### I.   BACKGROUND

From 1992 until 2002, Plaintiff worked as a parts manager for Defendant Ron Lewis Automotive Group ("RLAG"). During that period, Plaintiff was a participant in Defendant Ron Lewis Automotive Group Health Protection Plan ("HPP"), an ERISA plan. ("Plan"). Defendant Diversified Group Administrators, Inc. ("DGA") served as a third party administrator for the Plan. In this capacity, DGA sent notices to departing and former employees pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985

-1-

("COBRA"), 29 U.S.C. §§ 1161 *et seq.*, and processed COBRA premium payments for the Plan.

In November 2002, Plaintiff terminated his employment at RLAG. He accepted continuation coverage under COBRA, and began making monthly premium payments. On November 19, 2002, Plaintiff received a letter and a COBRA premium payment book from DGA. That book bore the following statement: "You are only eligible to remain on the COBRA extension until you are covered under another plan or Medicare." Each time Plaintiff submitted his monthly COBRA premium payment, he signed a statement which read: "I understand that by signing this form I am indicating that I qualify for continuation of coverage under this plan and have not become covered by any other group plan or Medicare as of this date."

On May 26, 2003, Plaintiff turned 65 years-old and became eligible for Medicare. Shortly thereafter, Plaintiff began receiving Medicare A benefits. Nevertheless, Plaintiff continued to submit COBRA premium payments and to obtain COBRA benefits until February 2004, when DGA finally realized that his Medicare coverage had extinguished his right to receive Plan benefits. DGA then notified Plaintiff that, because he was no longer eligible for COBRA, his coverage under the Plan had terminated retroactive to October 29, 2003. On behalf of the Plan, Defendant The Barron Health Agency ("Barron") refunded to Plaintiff the COBRA premiums that he had paid during the period in which he was not eligible for coverage under the Plan, *i.e.*, for the period spanning May 2003 through January 2004. During that period, Plaintiff allegedly incurred approximately $60,000 in medical expenses.

Plaintiff filed his Complaint in this action on January 27, 2005. Therein he asserted three distinct claims under ERISA, which were that (1) Defendants failed to follow the notice requirements of 29 U.S.C. § 1166(a)(4) of the COBRA statute; (2) Defendants breached their fiduciary duties by failing to provide such notice; and (3) Defendants were equitably estopped from denying him coverage under the Plan. On March 29, 2005, Defendant DGA filed a "Motion to Dismiss/For Summary Judgment," ("DGA Motion"), along with a Brief in Support

("DGA Brief") and a "Statement of Undisputed Facts" ("DGA Statement"). Also on March 29, 2005, Defendants Barron and RLAG filed their own Motion to Dismiss ("Barron Motion"), including a Brief in Support ("Barron Brief"). On April 20, 2005, HPP filed its own Motion to Dismiss and Brief in Support. ("HPP Motion" and "HPP Brief," respectively). The thrust of Defendants' arguments was that COBRA did not entitle Plaintiff to notice in this situation, that they could not have possibly breached any fiduciary duty to Plaintiff by failing to provide him with notice to which he was not legally entitled in the first place, and that he had not adequately pleaded the elements of equitable estoppel.

Plaintiff filed a single "Brief in Opposition" to all of the motions to dismiss on May 20, 2005. ("Opposition" or "Opp."). On June 10, 2005, DGA filed a Reply to Plaintiff's Opposition. ("DGA Reply"). None of the other Defendants filed reply briefs.

This matter is now fully briefed and is ripe for decision. As will be explained below, the motions will be granted in part and denied in part.

## II.   RULE 12(b)(6) STANDARD

It is well settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). Dismissal of a complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000) (*citing Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)). The question is not whether the plaintiff will ultimately prevail; instead, it is whether the plaintiff can prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Under this standard, a complaint will be deemed sufficient if

it adequately puts the defendant on notice of the essential elements of a cause of action. *See Nami*, 82 F.3d at 66. However, legal conclusions need not be credited on a motion to dismiss. *See Shawley v. Bethlehem Steel Corp.*, 989 F.2d 652, 657 n. 10 (3d Cir.1993).

When a court is asked to review the decision of the Plan Administrator, it applies a specialized standard of review developed in the context of ERISA.[1] At least one court has held that the ERISA standard of review is to be applied alongside the Rule 12(b)(6) standard. *See Schurich v. Principal Financial Group*, No.Civ.A. 304CV2074, 2005 WL 1154490, at *1 (M.D. Pa. May 12, 2005)(noting that "the motion to dismiss standard must be applied in the light of the standard of review utilized in ERISA cases"). The Court declines to follow *Schurich* on this point because, on a motion to dismiss, the Court reviews the sufficiency of the allegations of the Complaint — not the actual decision made by a plan administrator. *See Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). Thus, although the parties disagree as to which level of ERISA review is applicable, (*compare* Opp. at 6-7 (arguing that *de novo* review is appropriate); *with* DGA Reply at 1-4 (arguing that the Plan Administrator's decision must be upheld unless it is arbitrary and capricious)), the issue is premature because the Court is reviewing the allegations of the Complaint, rather than Defendants' decision to terminate Plaintiff's COBRA benefits.

Even if the Court could apply an ERISA standard of review while remaining faithful to the Rule 12(b)(6) standard, the record is not sufficiently developed to permit it to do so at this time. As *Schurich* went on to say, "[t]he standard of review applied in ERISA cases depends upon the identity of the plan administrator and whether the administrator is vested with

---

[1] A district court reviews a denial of ERISA plan benefits under a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan confers discretion on the administrator, the court applies a deferential "arbitrary and capricious" standard. *See id.* at 111-12; *see also Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002).

discretionary authority to determine eligibility for benefits." *See Schurich*, 2005 WL 1154490, at *1. The parties appear unable to agree who the plan administrator is. (*Compare* Complaint, ¶ 40 (asserting that DGA is the Plan Administrator) *and* Opp., Exh. E, at 2 (identifying RLAG as the Plan Administrator) *with* DGA Brief at 6 (denying that DGA is a fiduciary of the Plan but neither admitting nor denying that it was the Plan Administrator); HPP Brief at 1-5 (same); Barron Brief at 3 (denying that Barron is an administrator and arguing that the Complaint did not plead that RLAG was the Plan Administrator)).

At this stage of the proceedings, the Court therefore declines to decide which of the two ERISA standards of review it eventually will use to review Defendants' decision to terminate Plaintiff's COBRA continuation benefits. Instead, the Court will evaluate the allegations of the Complaint through the lens of the standard of review applicable to Rule 12(b)(6) motions in general.[2]

### III.  DISCUSSION

Defendants offer three reasons why they believe they are entitled to dismissal of the Complaint. First, they insist that 29 U.S.C. § 1166(a)(4) did not require them to notify Plaintiff before terminating his COBRA benefits. (*See* DGA Brief at 2-5; Barron Brief at 2-5; HPP Brief at 1-2). Second, they contend that, insofar as Plaintiff had no right to COBRA notice under § 1166(a)(4), they either had no fiduciary duty to Plaintiff, (*see* HPP Brief at 2), or that they were neither fiduciaries nor in breach of any duty. (*See* DGA Brief at 5-7; Barron Brief at 5-8). Finally, Defendants argue that Plaintiff's claim of equitable estoppel fails because he has

---

[2] The Court observes, however, that the ERISA standard of review has no bearing on its analysis because Counts I and II would not withstand a Rule 12(b)(6) motion even under a generous *de novo* review, whereas Count III would state a claim even under the more restrictive "arbitrary and capricious" standard of review. *See Cherry v. Biomedical Applications of Pennsylvania, Inc. Cherry v. Biomedical Applications of Pennsylvania, Inc.*, 397 F.Supp.2d 609, 612 n.6 (E.D.Pa. 2005) (declining to choose between *de novo* and the arbitrary-and-capricious standards of review when ruling on a motion to dismiss).

not adequately pleaded all of the elements of that claim. (*See* DGA Brief at 8-11; HPP Brief at 2-4; Barron Brief at 8-11).

The Court will address each of Defendants' arguments *seriatim*. As will be explained below, Defendants' motions to dismiss must be granted as to Counts I and II, but denied as to Count III.[3]

### A. Count I Must Be Dismissed Because 29 U.S.C. § 1166 Did Not Entitle Plaintiff To COBRA Notice

In Count I of the Complaint, Plaintiff argues that 29 U.S.C. § 1166 required the Plan Administrator to provide him notice that his COBRA continuation coverage would cease once he became entitled to Medicare. (*See* Opp. at 7-8). Defendants disagree, insisting that Plaintiff was not a qualified beneficiary entitled to notice within the meaning of the COBRA statute. (*See* DGA Brief at 3-5; Barron Brief at 3-5; HPP Brief at 1; DGA Reply at 5-8). After reviewing the pleadings, the Court concludes that Count I fails to state a claim on which relief can be granted.

The COBRA statute requires that a plan administrator provide a beneficiary notice of his COBRA rights on two distinct occasions. First, the plan administrator must provide notification of COBRA rights to covered employees and their spouses at the commencement of plan coverage.[4] *See* 29 U.S.C. § 1166(a)(1). Second, the occurrence of a "qualifying event"

---

[3] The Court declines to consider Defendant DGA's alternative motion for summary judgment on less than a full record. *See Guss v. Guidant Corp.*, No. Civ.A. 03-CV-04630, 2004 WL 2203736, at *1 n.1 (E.D. Pa. Sept. 30, 2004) (denying an ERISA defendant's motion to dismiss and declining to consider its alternative motion for summary judgment prior to discovery). Additionally, the Court notes that Plaintiff and several Defendants refer to matters outside of the pleadings in their memoranda in support of and in opposition to the motions to dismiss. The Court will exclude these matters from its consideration rather than treat any of the motions as motions for summary judgment. *See* Fed.R.Civ.P. 12(b). Accordingly, DGA's alternative motion for summary judgment is denied without prejudice.

[4] Plaintiff concedes that he received the initial notice to which he was entitled under § 1166(a)(1). (*See* Complaint, ¶ 15).

may prompt the additional notification of COBRA rights. *See* 29 U.S.C. § 1166(a)(4). Specifically, COBRA requires a health plan administrator to provide sufficient notice of COBRA rights to a covered employee and qualified beneficiaries who would lose coverage under the plan as a result of a qualifying event. *See* 29 U.S.C. § 1161. Upon the occurrence of a "qualifying event," "the employer of an employee under a plan must notify the administrator ... within 30 days ... of the date of the qualifying event[.]" *See* 29 U.S.C. § 1166(a)(2). The administrator then must notify any qualified beneficiary of his COBRA rights within 14 days of the receipt of notification from the employer. *See* 29 U.S.C. § 1166(a)(4)(A) & (c). ERISA gives the aggrieved COBRA beneficiary a cause of action if a plan administrator fails to provide the required notice in either of these two circumstances. *See* 29 U.S.C.A. § 1132(c)(1)(A).

Focusing on the second of these two circumstances, Plaintiff insists that his entitlement to Medicare was a "qualifying event" which entitled him to pre-cancellation notice pursuant to § 1166(a)(4). (*See* Complaint, ¶ 33). Although Plaintiff concedes that, under the terms of the Plan, the administrator could terminate his COBRA coverage upon discovering that he had become entitled to Medicare, (*see* Opp. at 10), he argues that the Plan itself provided that such termination was not automatic, but only would occur at the discretion of the administrator.[5] (*See* Opp. at 8; *see also* Opp., Exh. E at 23 ¶ 6.03B). On the strength of the Plan's permissive termination language,[6] Plaintiff argues that, *if* the Plan Administrator decided to terminate his COBRA continuation coverage, he was entitled to advance — rather than retroactive — notice.

---

[5] Although the full Plan document is only attached to the Opposition, the Court may look beyond the complaint to extrinsic documents when the plaintiff's claims are based on those documents. *See GSC Partners, CDO Fund v. Washington*, 368 F.3d 228, 236 (3d Cir. 2004).

[6] Incidentally, this construction of the Plan is consistent with the pertinent regulations, which also describe cancellation of COBRA continuation coverage upon the employee's entitlement to Medicare as permissive. *See* 26 C.F.R. § 54.4980B-7, Q&A-1 (noting that COBRA continuation coverage "must extend for at least the period beginning on the date of the qualifying event and ending not before" the earliest of several occurrences, including, among other things, the covered employee's entitlement to Medicare).

(*See* Opp. at 7-11). Perhaps because the Plan is silent on this point, (*see* Opp., Exh. E), Plaintiff identifies one and only one source of his alleged entitlement to pre-cancellation notice: 29 U.S.C. § 1166(a)(4). (*See* Complaint, ¶ 33).

The Court concludes that § 1166(a)(4) did not, as a matter of law, require the Plan Administrator to provide Plaintiff advance notice that his entitlement to Medicare had resulted in the cessation of his COBRA continuation coverage. In pertinent part, that statute states: "[T]he administrator shall notify [...] in the case of a qualifying event [including the covered employee's entitlement to Medicare] [...] any qualified beneficiary with respect to such event [...] of such beneficiary's rights under this subsection." *See id.* As the COBRA statute indicates, two things are necessary to trigger the administrator's obligation to provide notice: a qualifying event, and a qualified beneficiary. A "qualifying event" is one "which, *but for the continuation coverage required under this part*, would result in the loss of coverage of a *qualified beneficiary*." 29 U.S.C. § 1163 (emphasis added). As the word "qualifying" reflects, the qualifying event is one which would entitle the beneficiary to *elect* COBRA coverage — not an event that would *cut off* his pre-existing rights to COBRA benefits. In Plaintiff's case, therefore, his *retirement* was the only "qualifying event" entitling him to COBRA notice, since — but for the COBRA continuation coverage — his ineligibility for benefits on the insurance policy of his employer would have resulted in a loss of coverage to him at a time when he was indisputably a qualified beneficiary.[7] *See* 29 U.S.C. § 1163(2). Thus, Plaintiff's entitlement to Medicare was not a "qualifying event" for him as a matter of law.[8]

---

[7] Again, Plaintiff concedes that he received COBRA notice after that event. (*See* Complaint, ¶ 15).

[8] It is important to note that "the definition of 'qualifying event' focuses largely on the resulting loss of coverage to other family members," rather than the employee himself. *See McDowell v. Krawchison*, 125 F.3d 954, 959 (6th Cir.1997). Although a covered employee's entitlement to Medicare *can* be a qualifying event for his family members in some circumstances, *see* 29 U.S.C. § 1163(4), the "covered employee [himself] is a qualified beneficiary only when he or she is terminated other than for gross misconduct or experiences a reduction in hours." *McDowell*, 125 F.3d at 959 (citing 29 U.S.C. § 1167(3)(B)); *see also* 26 C.F.R. § 54.4980B-3.

Indeed, as far as Plaintiff was concerned his entitlement to Medicare was a *dis*qualifying event because it meant that he was no longer a "qualified beneficiary" as a matter of law. *See* 29 U.S.C. § 1162(2)(D). A plan is no longer obligated to provide COBRA benefits on "[t]he date, after the date of the election, upon which the qualified beneficiary first becomes entitled to Medicare benefits." 26 C.F.R. § 54.4980B-7 Q&A1(5). As the regulations make plain, once a plan is no longer obliged to provide COBRA benefits to a person, that person thenceforth is no longer considered to be a qualified beneficiary: "Once a plan's obligation to make COBRA continuation coverage available to an individual who has been a qualified beneficiary ceases under the rules of § 54.4980B-7, the individual ceases to be a qualified beneficiary." 26 C.F.R. § 54.4980B-3 Q&A1(f). Because COBRA's notice requirement requires the existence of both a qualifying event and a qualified beneficiary, and because Plaintiff's entitlement to Medicare was not a qualifying event but was, instead, a circumstance that extinguished his status as a qualified beneficiary, § 1166(a)(4) did not require the Plan Administrator to notify him of the consequences of this occurrence.

Aside from his entitlement to Medicare, Plaintiff has not argued that any other post-retirement circumstance should be considered a qualifying event that would trigger the notice requirement of § 1166(a)(4). Nor has Plaintiff identified any other statutory basis for his claim that he was entitled to COBRA notice. (*See* Complaint, ¶ 34 (pleading only that Defendants violated "*this section* of ERISA") (emphasis added)). That being so, and because Plaintiff's contention that Defendants' failure to provide him pre-cancellation notice under 29 U.S.C. § 1166(a)(4) is "premised on [his] erroneous interpretation of COBRA, [Count I] cannot survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *See Liberty Life Assur. Co. of Boston v. Toys R Us, Inc.* 901 F.Supp. 556, 564 (E.D. N.Y. 1995).

---

The COBRA statutory scheme defines the "qualifying event" in such a way that, for example, "[t]he covered spouse often may be a qualified beneficiary where the covered employee is not." *Id.* Thus, although Plaintiff's entitlement to Medicare theoretically could have been a qualifying event for *other* members of his family, he is the only "qualified beneficiary" identified in the Complaint. (*See* Complaint, ¶¶ 9-27).

For these reasons, Count I will be dismissed without prejudice to permit Plaintiff to amend his Complaint to plead an alternate source of the entitlement to COBRA notice, if one exists.

### B. Count II Must Be Dismissed Because Plaintiff Has Not Pleaded A Cognizable Fiduciary Duty Owed Him By Defendants

In Count II, Plaintiff contends that, by failing to give him the aforementioned notice under 29 U.S.C. § 1166, Defendants each breached fiduciary duties toward him. (*See* Complaint, ¶¶ 36-42). Defendants move to dismiss on the ground that Plaintiff has not met his burden of pleading that they even *had* a fiduciary duty to provide him COBRA notice — let alone that they breached such a duty. (*See* DGA Brief at 5-7; *see also* Barron Brief at 5-8; HPP Brief at 2). The Court concludes that, for reasons similar to those set forth above, this claim fails as a matter of law, and must be dismissed.

Under 29 U.S.C. § 1132(a)(3)(B), a beneficiary may sue "to obtain other appropriate equitable relief (i) to redress [ERISA violations] or (ii) to enforce any provisions of this subchapter or the terms of the plan." Construing this language, courts have held that plan beneficiaries may prove a breach of fiduciary duty by showing: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a failure to inform on the part of the defendant; (3) the materiality of that failure to inform; and (4) plaintiff's detrimental reliance on the incomplete information. *See Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.*, 93 F.3d 1171, 1179-84 (3d Cir. 1996). "[W]hen a plan administrator [...] fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." *In re Unisys Corp. Retiree Med. Ben. ERISA Litigation*, 57 F.3d 1255, 1264 (3d Cir.1995).

The first element of a breach of fiduciary duty is adequately pleaded in the Complaint. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ...." *See* 29 U.S.C. § 1104(a)(1). A "fiduciary" under ERISA is any person who "exercises any discretionary ... control respecting management

of such plan ... or ... has any discretionary authority ... in the administration of such plan." *See* 29 U.S.C. § 1002(21)(A). Here, Plaintiff has pleaded that RLAG and Barron "exercised an authority or control" of Plan assets, and that DGA "exercised discretionary authority and/or responsibility" for the administration of the Plan. (*See* Complaint, ¶¶ 37-38). Time will tell which of the Defendants, if any, actually acted as fiduciaries. But in the meantime, the Complaint sufficiently pleads that each Defendant acted as a Plan fiduciary in some capacity. *See* 29 U.S.C. § 1105(a); *see also Taylor v. Peoples Natural Gas Co.,* 49 F.3d 982 (3d Cir. 1995) (holding that a plan administrator may be liable for the material misrepresentations made by individuals who have been selected as non-fiduciary agents by the plan administrator to assist it in its fiduciary obligation to administer a plan).

Plaintiff has not, however, adequately pleaded that ERISA imposed on Defendants the duty to inform him that his entitlement to Medicare could result in the termination of his COBRA continuation coverage. As explained above, 29 U.S.C. § 1166(a)(4) did not impose this duty because Plaintiff's entitlement to Medicare was not a "qualifying event" for him in these circumstances. Nor has Plaintiff identified any other source of this duty: instead, he argues only that "defendants breached their respective fiduciaries [*sic*] duties by failing to provide proper notification to the [P]laintiff upon the termination of his COBRA benefits." (*See* Opp. at 12).

Finally, the Court observes that Count II does not appear to plead a proper remedy. In pertinent part, ERISA provides:

> A civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*See* 29 U.S.C. § 1132(a) (2005) (emphasis added). Plaintiff does not seek to "enjoin any act or practice." Instead, he seeks to recover monetary damages in the amount of "all unpaid medical

benefits," including interest, penalties, and attorney fees. (*See* Complaint, ¶ 42). Even if the Court credits Plaintiff's contention in his Opposition that the remedy he seeks is restitutionary,[9] (*see* Opp. at 13), this claim would still fail. Where, as here, an ERISA plaintiff attempts to characterize the payment of his insurance claims as "restitution," his claim usually will fail because he is seeking *legal* — as opposed to *equitable* — restitution: and only the latter is available under § 1132(a). *See Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 457 n.3 (3d Cir. 2003) (predicting that claims for disgorgement and restitution of ERISA benefits under a breach-of-fiduciary duty theory are "likely barred by the Supreme Court's decision in [*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)] [because] there are no funds readily traceable to [the plaintiff] over which a constructive trust or other equitable remedy may be imposed."); *see also Unum Life Ins. Co. of America v. Grourke*, 406 F.Supp.2d 524, 527-30 (M.D. Pa. 2005).

For these reasons, the Court concludes that Count II of the Complaint does not state a claim as it is presently pleaded. Accordingly, this claim fails as a matter of law, and must be dismissed without prejudice to permit Plaintiff to plead, if he can, another source of the duty to inform him of the impending termination of his COBRA continuation coverage and to identify and plead a proper equitable remedy.[10]

---

[9] The Court considers the arguments Plaintiff advances in his Opposition only to the extent that they clarify the allegations in his Complaint. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commw. of Pa. Ex. Rel Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

[10] Although the Court's conclusion that Plaintiff has not pleaded the existence of a fiduciary duty obviates the need to consider whether he has pleaded the remaining elements of the tort, it bears emphasis that Plaintiff does not appear to have adequately pleaded the last two elements of a breach of fiduciary duty — *i.e.*, he has not pleaded materiality or detrimental reliance. (*See* Complaint, ¶¶ 36-42). Obviously, these defects also must be remedied in any subsequent pleading of this cause of action.

C.   **Defendants' Motions To Dismiss Count III Must Be Denied Because Plaintiff Adequately Has Pleaded The Elements Of Equitable Estoppel**

Finally, in Count III, Plaintiff maintains that Defendants should be equitably estopped from terminating his COBRA continuation coverage retroactively. (*See* Complaint, ¶¶ 43-52). Defendants move to dismiss this claim on the ground that Plaintiff has not pleaded the elements to establish equitable estoppel, and argue that he should be barred from recovery because of his own unclean hands. (*See* DGA Brief at 7-10; *see also* Barron Brief at 8-10; HPP Brief at 2-4; DGA Reply at 10-11). After reviewing the pleadings, the Court concludes that Defendants' motions to dismiss Count III must be denied.

The Third Circuit repeatedly has held "that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for" specifically in the ERISA statutory scheme. *See Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir.1995) (citations omitted). The court also has explained, however, that an "ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation, and extraordinary circumstances." *See In Re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 907 (3d Cir.1995) ("*Unisys II*"). As *Unisys II* indicates, Plaintiff bears the burden of pleading and proving each element of equitable estoppel. *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1554 (3d Cir.1996). After reviewing the Complaint, the Court finds that Count III satisfies these basic pleading requirements.

The Complaint pleads the first and second elements adequately. A material representation is defined as "any provision of a plan subject to ERISA that establishes a benefit." *Curcio v. John Hancock Mutual Life Insurance Co.*, 33 F.3d 226, 237 (3d Cir.1994). Although the Complaint is not a model of clarity on this point, it does plead that, by accepting Plaintiff's premium payments, Defendants materially misrepresented his eligibility for COBRA continuation coverage. (*See* Complaint, ¶48). Plaintiff also has pleaded reliance. Reasonable

-13-

and detrimental reliance is established when a claimant suffers an injury because he reasonably relied upon a material representation. *See Curcio*, 33 F.3d at 237. Here, Plaintiff pleads that he "detrimentally changed his position by incurring medical expenses and/or failing to enrol in other coverage in reliance on the employer's/administrator's misrepresentation that COBRA coverage was in effect." (Complaint, ¶ 50).

Finally, the Court finds that the Complaint pleads extraordinary circumstances. (*See* Complaint, ¶¶ 43-52). To determine whether "extraordinary circumstances" exist, the Third Circuit has taken several approaches. *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir.1996). First, the court has examined whether the employer has engaged in affirmative acts of fraud or similarly inequitable conduct. *See Kurz*, 96 F.3d at 1553. At this point, the Court cannot say that there exists no set of facts that could support a finding of fraud or inequitable conduct by Defendants. Alternatively, the Third Circuit has looked to whether there was a "network of misrepresentations" made by the employer to the employee. *See id.* From the face of the Complaint alone, it is arguable that each time Defendants accepted and cashed Plaintiff's premium checks, they implicitly represented that he was entitled to benefits under the Plan — thus creating a "network" of misrepresentations within the meaning of *Kurz*. (*See* Complaint, ¶ 44). Finally, the Circuit has also considered whether the plaintiff was particularly vulnerable. *See id.* In this case, Plaintiff alleges that Defendants lulled him into believing that he had COBRA coverage by continuing to cash his checks for several months after the date that they now claim he became ineligible for continuation coverage. (*See* Complaint, ¶¶ 23, 48-50). If discovery bears out this claim, and the Court makes no finding on that issue, this could be a basis for finding that the plaintiff was particularly vulnerable.

In sum, the Court concludes that Plaintiff has pleaded all of the elements necessary to state a claim that Defendants are equitably estopped from denying him COBRA continuation coverage for the period in question. Discovery may or may not uncover the facts needed to substantiate these allegations. But in the meantime, Defendants' motions to dismiss Count III

of the Complaint must be denied.

Date: September 12, 2006

_D S Cercone_
David Stewart Cercone
United States District Judge

cc:   Alan T. Silko, Esquire
      Damon R. Thomas, Esquire
      Levicoff, Silko & Deemer, P.C.
      Suite 1900 Centre City Tower
      650 Smithfield Street
      Pittsburgh, PA 15222

      Elaine Cribbs Rizza, Esquire
      Kimberly A. Sebring, Esquire
      The Rizza Group Professional Group
      311 Allison Avenue
      Washington, PA 15301

      Pamela G. Cochenour, Esquire
      Pietragallo, Bosick & Gordon
      One Oxford Centre, 38th Floor
      Pittsburgh, PA 15219

      Gregory G. Paul, Esquire
      Peirce, Raimond & Coulter, P.C.
      2500 Gulf Tower
      Pittsburgh, PA 15219